UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


L. T. TUCKER, JR.,

        Plaintiff,

v.                                                          Case No. 2:06-cv-58
                                                            HON. ROBERT HOLMES BELL

SANDRA MONROE, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

        Plaintiff L. T. Tucker, Jr., an inmate currently confined at the Marquette Branch Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Nurse Sandra Monroe and Prison Guard R. Vining. Plaintiff's claims against Defendant Vining were dismissed on May 31, 2006 (docket #20). Therefore, the court need only address Plaintiff's claims against Defendant Monroe.

        Plaintiff's complaint alleges that on April 16, 2005, Defendant Monroe issued a false misconduct report on Plaintiff in retaliation for his use of the grievance system. Plaintiff attaches numerous grievances to his complaint in support of this assertion. In addition, Plaintiff states that Defendant Monroe told Plaintiff that she was going to write a false misconduct ticket in retaliation for his grievances on April 14, 2005. Plaintiff further alleges that on April 16, 2005, Defendant Monroe did not give him his medication and told Plaintiff, "we are going to get your black ass." Plaintiff also claims that on May 4, 2005, Defendant Monroe told Plaintiff that she was going to give him the wrong pill in an attempt to kill him. Plaintiff contends that on June 15, 2006, Defendant

Monroe stated that she was going to kill him for filing multiple grievances and that she would arrange for a co-worker to kick Plaintiff's "black ass." Plaintiff states that Defendant Monroe has denied him access to his diabetes medication from April 14, 2005, until September 23, 2005. Plaintiff claims that this denial exacerbated his Type II diabetes and caused symptoms such as dizziness, drowsiness, headache, nausea, hypoglycemia, stress, and mental and emotional distress. Plaintiff is suing Defendant Monroe in her individual capacity and is seeking compensatory and punitive damages, as well as injunctive relief.

Presently before the Court is the Defendant Monroe's motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has also filed a motion for summary judgment in lieu of a response. Defendant has responded to Plaintiff's motion for summary judgment and Plaintiff has filed supplemental pleadings. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In Defendant's brief in support of the motion for summary judgment, she states that a retaliation claim is not cognizable where a prisoner is found guilty of a disciplinary ticket. Defendant attests that she wrote the misconduct ticket on April 16, 2005, after Plaintiff yelled "[f]uck you Bitch, it's too early," when she attempted to give him his medication.  (*See* Defendant's affidavit, ¶ 6.)  Plaintiff was found guilty of the misconduct ticket on May 4, 2005.

In Plaintiff's brief in support of the motion for summary judgment, he contends that on April 14, 2005, Defendant Monroe threatened to retaliate against him by writing a false misconduct on him.  Plaintiff alleges that prisoners Farris, Williamson, and Murphy witnessed Defendant Monroe's threat.  On April 16, 2005, Defendant Monroe did not give him his medication. When Plaintiff told her that he was going to file a grievance, she stated "you are not getting it now." Plaintiff also contends that Defendant stated, "I told you I would get you first for that grievance you filed on Blackford."

As noted by Defendant Monroe, Plaintiff claims that the April 16, 2005, misconduct ticket was false and motivated by a desire to retaliate against him.  In the opinion of the undersigned, this claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Supreme Court

has held that a claim for equitable relief and monetary damages, based upon allegations of deceit and bias that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck*, 512 U.S. at 486-87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).

Plaintiff's claim necessarily implies the invalidity of his misconduct convictions. Under *Edwards*, Plaintiff must first show that his misconduct conviction has been invalidated before his § 1983 action will be cognizable. *See Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000) (prisoner's claim that his due process and Eighth Amendment rights were violated by false, retaliatory misconduct charges necessarily implies the invalidity of the guilty findings on the misconduct tickets). Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division. MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ X. Thereafter, a prisoner may appeal the misconduct conviction to the state circuit court. MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ AA (concerning appeal). If Plaintiff is unsuccessful in the circuit court, he could then apply for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court. *See* M.C.R. 7.203(B); 7.302. If he is not successful in the state courts, he may then seek to overturn the convictions by bringing a federal habeas corpus

action.[1]  Because Plaintiff has not shown that his convictions have been invalidated, his claim that

the April 16, 2005, misconduct ticket was retaliatory is not presently cognizable.

However, the undersigned notes that Plaintiff is also claiming that Defendant Monroe

retaliated against him by denying him his prescription diabetes medication on numerous dates

between April 14, 2005, and September 23, 2005.  Retaliation based upon a prisoner's exercise of

his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378,

394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff

must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against

him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the

adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at

394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a

substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v.

Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ.

v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that these denials were witnessed by prisoners Farris, Williamson,

Murphy, T. Wells, T. King, A. Carson, J. Martin, K. Brown, Brewer, and Houdson-Bey.  Plaintiff

claims that on April 16, 2005, Defendant Monroe told him that she was going to "get" his "black

ass."  Plaintiff states that on May 4, 2005, Defendant Monroe threatened to give him the wrong pill

and kill him.  Plaintiff contends that on May 5, 2005, Defendant Monroe stated that as long as

---

[1]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence."  *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).  A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts.  *See* 28 U.S.C. § 2254(b)(1).

Plaintiff kept filing grievances and talking about filing civil actions on her, she was not going to give

him his medication.  Plaintiff states that on May 17, 2005, Defendant Monroe threatened to kill him.

Finally, Plaintiff alleges that on June 15 and 16 of 2005, Defendant Monroe again threatened to kill

Plaintiff for filing grievances and indicated that she would arrange for her co-workers to kick

Plaintiff's "black ass."

Defendant Monroe claims that merely making threats is not enough to constitute

adverse action sufficient to deter a person of ordinary firmness from pursuing legitimate grievances

or lawsuits.  However, the undersigned notes that Plaintiff in this case is claiming that Defendant

Monroe denied him his prescribed medication.  Therefore, his claim constitutes more than mere

threats. Consequently, the undersigned concludes that Defendant Monroe is not entitled to summary

judgment on the claim that Defendant Monroe retaliated against Plaintiff by denying him his

prescribed medication.

Defendant Monroe contends that she is entitled to summary judgment on Plaintiff's

Eighth Amendment claim that he was denied his prescribed medication, specifically Glucotrol.  The

Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted

of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide

medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with

contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth

Amendment is violated when a prison official is deliberately indifferent to the serious medical needs

of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective

component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Defendant Monroe claims that Plaintiff rejected his medication on numerous occasions.  In her affidavit, which is attached to the brief in support of the motion for summary judgment, Defendant Monroe denies ever refusing to give Plaintiff his medication.  Rather, Defendant Monroe attests that Plaintiff frequently refused to come to the door or to answer her when she passed out medications.  In addition, Defendant Monroe states that Plaintiff would sometimes

shake his head "no" when she attempted to give him his medication.  Defendant Monroe states that

on April 16, 2005, Plaintiff stated "Fuck you bitch, it's too early" when she attempted to give him

his medication.  Defendant Monroe further attests that on May 4, 2005, R.N. Blackford gave Plaintiff

his medication, so that she had no reason to see Plaintiff, much less to threaten him with the wrong

medication.  Defendant Monroe denies working on June 15, 2005, the date on which Plaintiff claims

Defendant Monroe threatened to have her co-workers kill him.  (*See* Defendant's Exhibit A.)

Defendant Monroe also offers copies of Plaintiff's medical record from the pertinent time period.

A review of the record reveals that Plaintiff refused his medications numerous times between April

14, 2005 and September 23, 2005.  (*See* Defendant's Exhibit A, Attachments 1-2.)

In Plaintiff's brief, he asserts that Defendant Monroe intentionally deprived Plaintiff

of his prescription medication.  Plaintiff states that this conduct was observed by other prisoners and

attaches the affidavits of prisoners Timothy King and Terence Wells.  (*See* Plaintiff's Exhibits B and

C.)   According to his affidavit, prisoner King attests that he witnessed Defendant Monroe

intentionally walk past Plaintiff's cell without giving him his medication on June 1-3, 5, July 9-14,

29, August 1, 3, 5, 18-19, 22-25, 29, 31, and September 8-9, 12, 18-23 of 2005.  Prisoner King

further states that he heard Plaintiff ask Defendant Monroe for his medication each day, and that

Defendant Monroe responded that she was not going to "do shit" for Plaintiff because of the

grievances he filed on her.  Prisoner King denies ever hearing Plaintiff threaten Defendant Monroe

or refuse his medication.  (*See* Plaintiff's Exhibit C.)

In his affidavit, Prisoner Wells attests that he was confined in the cell next to Plaintiff

during the months of July, August and September of 2005.  Prisoner Wells states that during the time

he was confined near Plaintiff, he heard Plaintiff asking for his medication and Defendant Monroe

refusing and stating "I ain't giving you shit."  Prisoner Wells asserts that this occurred on numerous

occasions during the pertinent time period. Prisoner Wells denies ever hearing Plaintiff threaten

Defendant Monroe, except to say that he planned to file grievances on her and her co-workers. (*See*

Plaintiff's Exhibit B.)

After reviewing the record in this case, the undersigned concludes that there is a

genuine issue of material fact with regard to whether Defendant Monroe denied Plaintiff his

prescription medication and then lied about it in the medical record. Defendant Monroe cites *Farrell*

*v. Automobile Club of Michigan*, 870 F.2d 1129, 1132 (6th Cir. 1989), and argues that Plaintiff's

affidavit is self-serving and is not enough to raise an issue of fact in light of the medical record.

However, in *Farrell*, the plaintiffs relied on their own affidavits. *Id.* As noted above, the instant

case is distinct from the situation in *Farrell* because Plaintiff offers the affidavits of fellow prisoners

who allegedly witnessed the misconduct.

Defendant Monroe also contends that Plaintiff has failed to support his claim that he

suffered from any injury as a result of the alleged denial of medication. In his brief, Plaintiff

responds by stating that the treating physicians at the Baraga Maximum Correctional Facility (AMF),

Doctors Fernando Frontera and Rich Miller, have noted that Plaintiff's diabetes has worsened as a

result of the lack of medication and that he must now take insulin, rather than an oral medication,

to control his diabetes. Plaintiff states that he attempted to obtain his medical records for

September 30, 2005, to May 10, 2006, from records custodian Lisa Rosseau because they would

support his claim that he suffered injuries as a result of Defendant Monroe's misconduct. Plaintiff

claims that Defendant Monroe told Rosseau to only give Plaintiff the medical records for the period

April 1, 2005, to September 3, 2005. A copy of Plaintiff's request is contained in the record which

supports Plaintiff's assertion. (*See* Defendant's Sealed Exhibit C, docket #33.) After reviewing the

records, the undersigned notes that the records submitted following Plaintiff's request cover the

period up to September 30, 2005, when Plaintiff was transferred to AMF.  However, it appears that

Plaintiff is correct in noting that he did not receive medical records for the period October 1, 2005,

through May 10, 2006.

The undersigned notes that given Plaintiff's allegations that the denial of Glucotrol

exacerbated his Type II diabetes and that he is now reliant on insulin, and his showing that he

requested records through May 10, 2006, but was denied his request, there appears to be a genuine

issue of material fact regarding whether Plaintiff suffered injuries as a result of the alleged

misconduct.  Therefore, the undersigned recommends that the court deny summary judgment on

Plaintiff's Eighth Amendment claim.

Defendant Monroe asserts that she is entitled to summary judgment on the basis of

qualified immunity.  Government officials, performing discretionary functions, generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167

F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v.

Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An

"objective reasonableness" test is used to determine whether the official could reasonably have

believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635,

641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we

determine whether a constitutional violation occurred;  second, we determine whether the right that

was violated was a clearly established right of which a reasonable person would have known;

finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations

by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable

in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th

Cir. 1999).

When determining whether a right is clearly established, this court must look first to

decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other

courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An

official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City*

*of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light

most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the

proceeding."  *Id.*

The operation of the qualified immunity standard depends substantially upon the level

of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in light of the preexisting law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S.

226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

Defendant states that Plaintiff has failed to demonstrate the elements of a retaliation claim because he was found guilty of the misconduct ticket.  As noted above, Plaintiff's claim that the April 16, 2005, misconduct ticket was false and motivated by a desire to retaliate against him is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  However, Plaintiff's claim that he was denied medications in retaliation for his use of the grievance procedure is not similarly barred.  Nor is Defendant entitled to qualified immunity on Plaintiff's Eighth Amendment claim because there appears to be a genuine issue of material fact regarding whether the denial of Glucotrol exacerbated Plaintiff's Type II diabetes and caused him to require insulin.  As noted above, Plaintiff has supported his claim that he requested medical records through May 10, 2006, but was denied his request.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment with regard to his claim that Defendant gave him a retaliatory misconduct ticket.  However, Plaintiff's remaining retaliation and Eighth Amendment claims are not properly dismissed at this time.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #24) be granted with regard to the retaliatory misconduct claim and denied with regard to Plaintiff's remaining retaliation and Eighth Amendment claims.

In addition, because there is a genuine issue of material fact regarding Plaintiff's retaliation and Eighth Amendment claims, his motion for summary judgment (Docket #35) is properly denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 29, 2007